UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | | |
|---|---|---|
| KIMISSA ROWLAND, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil No. 3:18-cv-00033-GFVT-EBA |
| v. | ) | |
| | ) | |
| SOUTHERN HEALTH PARTNERS, | ) | **MEMORANDUM OPINION** |
| INC., *et al.*, | ) | **&** |
| | ) | **ORDER** |
| Defendants. | ) | |
| | ) | |
| | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

Before the Court is Defendants' Motion for Summary Judgment. [R. 53.] Plaintiff Kimissa Rowland was formerly incarcerated at Franklin County Regional Jail. She has filed suit under § 1983 against Southern Health Partners, Inc., Jane Bartram, Stacy Jensen, and Sabina Trivette for deliberate indifference to her serious medical needs, and also raises state law claims for negligence and gross negligence. [R. 1.] Defendants argue they are entitled to summary judgment because they are protected by qualified immunity, and because there is no genuine issue for trial. For the following reasons, Defendants' Motion for Summary Judgment [R. 53] is GRANTED.

**I**

Plaintiff Kimissa Rowland brings claims of deliberate indifference and medical negligence against Southern Health Partners, Inc., (SHP) Sabina Trivette, Stacy Jensen, and Jane Bartram. [R. 1.] Southern Health Partners, Inc. is "for-profit jail health care company" who contracts with local governments to provide medical care within their facilities. [R. 1 at ¶ 17.]

Defendant Sabina Trivette is a licensed practical nurse (LPN) and employee of SHP. [R.53-1 at 1.] Defendant Stacy Jensen is an advanced practice registered nurse (APRN) and independent contractor of SHP. *Id.* Jensen subcontracted with Jane Bartram, also an APRN, for her work in the jail. *Id.* at 1–2. Ms. Rowland was a sentenced inmate at Franklin County Regional Jail where she alleges she suffered injuries and a violation of her constitutional rights due to Defendants' deliberate indifference to her serious medical need: ulcerative colitis. [R. 62 at 12.]

The timeline of events is of some importance in this case. Ms. Rowland was admitted to Franklin County Regional Jail on July 28, 2017 on a drug charge. [R. 1 at ¶ 9.] On August 8, Ms. Rowland saw Nurse Trivette to deliver her medical history and undergo a physical. [R. 62 at 4.] On August 15, Ms. Rowland submitted a medical request form and saw Nurse Trivette the following day, August 16, complaining of a sexually transmitted disease. [R. 53-1 at 3; R. 62 at 4.] Nurse Trivette gave medication for the STD based on SHP protocol. [R. 53-1 at 4.]. Ms. Rowland again submitted sick class slips on August 18 and 19 complaining of rash and cold symptoms, and was seen by Nurse Trivette once again on August 19 for these symptoms. [R. 53-1 at 4.]

On September 11, Ms. Rowland was released on medical furlough in order to see her regular doctor for issues with her ulcerative colitis. [R. 53-1 at 4; R. 62 at 5.] However, due to a lapse in insurance, Ms. Rowland was unable to see her doctor during the furlough. [R. 62 at 5.] Upon return to the jail on September 13, Ms. Rowland was x-rayed by jail staff who suspected that she had a foreign body concealed in her rectum. [R. 53-1 at 5.] Ms. Rowland was sent to a local hospital for a CT scan. *Id.* The scan did not reveal a foreign body, and the emergency room doctor released Ms. Rowland with a note advising she follow-up with a gastroenterologist "as soon as possible[.]" [R. 62-5.] The hospital doctor also prescribed a five-day course of

2

prednisone. [R. 62 at 7.] Ms. Rowland began treatment with prednisone on September 21 after Nurse Bartram reviewed the after-care instructions received from the hospital. [R. 53-1 at 6.]

On September 25, Ms. Rowland submitted a medical request slip complaining of a toothache. [R. 53-1 at 6.] She was seen by Nurse Trivette the following day, who provided Motrin and cipro for her tooth pain. [R. 62 at 8.] Defendants contend Ms. Rowland did not submit another medical call slip for ulcerative colitis symptoms until October 3. [R. 53-1 at 6.] Ms. Rowland believes she may have submitted additional call slips between September 25 and October 3, but she cannot recall what they said or how Defendants responded. [R. 63-5 at 101–03.] On October 3, Ms. Rowland submitted a call slip which said "my stomach again (ulcerative colitis) and my mouth is still sore and swolling [sic]." *Id.* She was seen the next day by Nurse Trivette, wherein she complained of nausea and vomiting. *Id.* Nurse Trivette referred her to an APRN, but it wasn't until October 16 that Ms. Rowland was seen by Nurse Jensen. [R. 53-1 at 6; R. 62 at 9.] Nurse Jensen noted Ms. Rowland was experience vomiting and blood in her stools, and diagnosed her symptoms as those of ulcerative colitis. [R. 53-1 at 6; R. 62 at 9.] Nurse Jensen started Ms. Rowland on a second round of prednisone and ordered an appointment be made for Ms. Rowland at UK's Gastroenterology Clinic. Ms. Rowland received the prednisone, but was never taken to the clinic. [R. 62 at 10.] According to Ms. Rowland, there is no evidence in the record that the clinic was ever called. *Id.*

On October 18, Ms. Rowland submitted a medical request slip stating she was not responding to the prednisone as quickly as usual, and also complaining of pain in her kidneys. [R. 53-1 at 7.] Again she was seen by Nurse Trivette the very next day and was assessed for a possible urinary tract infection. *Id.* Ms. Rowland submitted an additional medical call slip on October 25 which read: "vomiting all night, can't keep anything down, cold chills. Feel afall

3

[sic]." [R. 53-1 at 7.] Ms. Rowland was seen by Nurse Trivette, who elevated the matter to Nurse Jensen. Nurse Jensen ordered Ms. Rowland be taken to the emergency room. *Id.* Ms. Rowland was admitted to the hospital where she remained for two weeks until her ulcerative colitis was managed. [R. 62 at 11.]

Based on the foregoing, Defendants argue they are entitled to summary judgment on all claims. Defendants argue Nurse Trivette, Nurse Bartram, and Nurse Jensen are entitled to qualified official immunity as to Ms. Rowlands § 1983 claim. [R. 53-1 at 9.] Additionally, Defendants contend Ms. Rowland has failed to demonstrate any of the defendants consciously disregarded a risk to her health. *Id.* at 15. Relatedly, if Defendants did consciously disregard a known health risk, resulting in harm to Ms. Rowland, Defendants argue Ms. Rowland must provide verifying medical evidence of that injury. *Id.* For the same reason, Defendants argue Ms. Rowland cannot prove injury as a result of medical negligence. *Id.*

## II

### A

Under Federal Rule of Civil Procedure 56, summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56. A fact's materiality is determined by the substantive law, and a dispute is genuine if "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

In deciding a motion for summary judgment, the Court must view the evidence and draw all reasonable inferences in favor of the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith*

4

*Radio Corp.*, 475 U.S. 574, 587 (1986). The burden is initially on the moving party to inform "the district court of the basis of its motion, and [to identify] those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of a material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once this burden is met, the nonmoving party, "must set forth specific facts showing that there is a genuine issue for trial." Fed.R.Civ.P. 56(e). Further, "the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.*, 886 F.2d 1472, 1479-80 (6th Cir. 1989). Instead, "the non-moving party has an affirmative duty to direct the Court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact." *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001).

**B**

Federal qualified immunity "protects government officials from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan,* 555 U.S. 223, 231 (2009) (citation and internal quotation marks omitted). When evaluating such claims, courts generally apply a two-step analysis. First, the court must consider whether "[t]aken in a light most favorable to the party asserting the injury, [ ] the facts alleged show the officer's conduct violated a constitutional right." *Saucier v. Katz,* 533 U.S. 194, 201 (2001). Second, the court asks whether the right at issue was "clearly established." *Id.* "The relevant dispositive inquiry in determining whether a right is clearly established is whether it would be clear to a reasonable officer that his conduct was unlawful in the situation he confronted." *Brosseau v. Haugen,* 543 U.S. 194, 199 (2004). "The burden of convincing a court that the law was clearly established

5

rests squarely with the plaintiff." *Key v. Grayson,* 179 F.3d 996, 1000 (6th Cir.1999) (citation and internal quotation marks omitted).

Here, the Court does not reach the two-part test, because the defendants are not "government officials" protected by qualified immunity. "A physician who contracts to provide medical services to prison inmates, the Supreme Court has held, acts under color of state law for purposes of § 1983. But a party is not entitled to assert qualified immunity simply because he is amenable to suit under § 1983." *McCullum v. Tepe*, 693 F.3d 696, 700 (6th Cir. 2012) (internal citations omitted). In *Harrison v. Ash*, the Sixth Circuit considered whether nurses employed by a private medical provider which contracted with a county detention center to provide medical services were entitled to official qualified immunity. 539 F.3d 510 (6th Cir. 2008). There, the Sixth Circuit concluded "the history and purpose of qualified immunity, as well as the case law interpreting the scope of the doctrine, are clear that Defendant nurses . . . are not eligible for qualified immunity in a § 1983 suit." *Id.* at 525. The facts of this case are indistinguishable from those in *Harrison.* Defendants Trivette, Jensen, and Bartram are privately employed or independent contractors hired by Defendant SHP. As such, they are ineligible for qualified immunity.

**C**

To succeed on an Eighth Amendment claim for deliberate indifference to serious medical needs, a plaintiff must prove more than mere negligence on behalf of prison authorities. *Brooks v. Celeste*, 39 F.3d 125, 127 (6th Cir. 1994); *see also Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Instead, a prison official will be liable only when he or she "knows of and disregards an excessive risk to inmate health or safety." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Put

6

another way, "the official must both be aware from of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.*

**1**

The parties agree that Ms. Rowland was seen by Nurse Trivette on a number of occasions. The record demonstrates that each time Ms. Rowland submitted a medical call slip, she was seen by Nurse Trivette the next day. However, Ms. Rowland argues "[t]he 'treatment' Rowland received in the jail . . . wasn't even treatment," because "Trivette was diagnosing and 'treating' Rowland's condition outsider her legal scope of practice, and without any orders or meaningful supervision by SHP, Jensen, or Bartram." [R. 62 at 15-16.] Therefore, according to Ms. Rowland, this is not a dispute about the adequacy of Ms. Rowland's medical treatment at the jail. [R. 62 at 15.] Ms. Rowland argues "the medical attention rendered [was] so woefully *inadequate* as to amount to no treatment at all." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976) (emphasis added).

The Court does not agree with Ms. Rowland's characterization. Just because Ms. Rowland argues the dispute is not over the adequacy of her care does not make it so. The record before the Court reflects that for every medical call slip submitted, Nurse Trivette attended to Ms. Rowland no greater than twenty-four hours later. In her deposition, Ms. Rowland stated she thought she submitted calls slips between September 25 and October 3 which were not produced in discovery. Even drawing the favorable inference that Ms. Rowland did submit these other call slips, there is not enough evidence to support a finding of deliberate indifference. Without more, the fact that Ms. Rowland experienced a delay in treatment until October 3 for a call slip possibly submitted after September 25 but before October 3 does not require a finding that defendants were deliberately indifferent to Ms. Rowland's medical needs.

7

The record further reflects that Nurse Trivette gave Ms. Rowland a variety of medications intended to ease her symptoms, both in relation to her ulcerative colitis as well as other ailments. Ms. Rowland argues this was outside Nurse Trivette's scope of practice, and she may be right; however, it is inaccurate to say Ms. Rowland received "no treatment at all," or that these facts mandate a finding of deliberate indifference. Although not a physician or nurse practitioner, Nurse Trivette had some authority to analyze inmates' symptoms and apply the appropriate SHP protocol. For argument's sake, perhaps Nurse Trivette committed malpractice; but "federal courts are generally reluctant to second guess medical judgments and to constitutionalize claims which sound in state tort law." *Westlake v. Lucas*, 537 F.2d 857, 860 n.5 (6th Cir. 1976). A showing of deliberate indifference requires more than medical negligence. *See Rhinehart v. Scutt*, 894 F.3d 721, 738 (6th Cir. 2018). "Instead, the plaintiff must show that each defendant acted with a mental state 'equivalent to criminal recklessness.'" *Id.*

Further, on at least two separate occasions when Nurse Trivette was concerned Ms. Rowland needed care she could not provide, Nurse Trivette elevated her concerns about Ms. Rowland's well-being to an APRN. [R. 53-1 at 7.] Her care may not have been perfect, and she may well have acted outside her scope of authority as an LPN. Regardless, nothing in the record supports a finding that Nurse Trivette acted with criminal recklessness. Accordingly, Count 1 of the Complaint is DISMISSED against Nurse Trivette.

**2**

The Court next turns to the conduct of APRN Bartram and APRN Jensen. As to Nurse Bartram, Ms. Rowland has not demonstrated that she knew of Ms. Rowland's serious medical need, nor that she disregarded it. Nurse Bartram never interacted with or examined Ms. Rowland. [R. 53-1 28.] Her only involvement in Ms. Rowland's care was approval after the fact

8

Nurse Trivette's administration of Mobic for Ms. Rowland's toothache. *Id.* Accordingly, there is no evidence in the record to establish Nurse Bartram acted with "a mental state 'equivalent to criminal recklessness[,]'" in her dealings with Ms. Rowland. *See Rhinehart*, 894 F.3d at 738.

Nurse Jensen's interactions with and participation in Ms. Rowland's care are slightly more substantial. Nurse Jensen examined Ms. Rowland on October 16, 2017 and noted that she complained of ulcerative colitis symptoms. [R. 53-1 at 28; R. 53-18.] Nurse Jensen ordered a second course of prednisone, which Rowland's symptoms had previously responded to favorably, and asked that Ms. Rowland be seen at UK's gastroenterology clinic. [R. 53-1 at 28.] Inexplicably, an appointment was not made, and Nurse Jensen did not follow up to verify whether an appointment was made. On October 25, 2017, Nurse Jensen learned from Nurse Trivette that Ms. Rowland's symptoms had not improved despite the prednisone. [R. 53-1 at 7.] On that occasion, Nurse Jensen ordered Ms. Rowland be taken to the emergency room. *Id.*

Again, Ms. Rowland has failed to establish that Nurse Jensen acted with deliberate indifference to her serious medical needs. In each interaction Nurse Jensen had with or concerning Ms. Rowland, Nurse Jensen took steps to address her medical needs. Nurse Jensen prescribed a second course of prednisone, knowing that medication had successfully treated Ms. Rowland's colitis in the past. Upon learning that it Ms. Rowland did not respond well to the prednisone, she immediately ordered Ms. Rowland be taken to the ER. Ms. Rowland argues that Nurse Jensen's failure to follow up regarding an appointment at the GI clinic, and the decision to restart prednisone instead of delivering Ms. Rowland to the hospital immediately amount to deliberate indifference. [R. 62 at 9.] But a difference in medical judgment does not amount to deliberate indifference. If Ms. Rowland wishes to dispute the efficacy of the care she received, a malpractice action is the appropriate vehicle. Even an error in medical judgment does not

9

automatically amount to a constitutional injury. *See Rhinehart*, 894 F.3d at 738. Count 1 of the complaint is DISMISSED against Nurses Bartram and Jensen.

**D**

Ms. Rowland also alleges violations of her Eighth Amendment Rights by Southern Health Partners, the corporation contracted to provide medical services at Franklin County Regional Jail. [R. 1.] Generally, a local government[1] may not be sued under § 1983 based on the actions of its employees or agents. *See Monell v. Dept. of Soc. Servs.*, 436 U.S. 658, 694 (1978). The exception to that general rule, known as *Monell* liability, provides that a local government may be held liable where "execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983." *Id.* Ms. Rowland's theory of liability is based upon a failure to train. According to Ms. Rowland:

> SHP's policies on caring for and monitoring patients with chronic conditions, and its protocol for gastrointestinal complaints, are the best evidence of its recognition of the need for training to avert a constitutional violation. But the evidence in this case demonstrates that SHP exercised no supervision over Jensen, Bartram, or Trivette's performance of their duties, and made no effort to train them to follow, or to enforce, its own policies, procedures, and protocols.

[R. 62 at 18.] Ms. Rowland relies upon *Shadrick*, in which "the Sixth Circuit condemned SHP's business model and traced its deliberate indifference all the way up to the office of its President and CEO[.]" [R. 62 at 18; *Shadrick v. Hopkins County*, 805 F.3d 724 (6th Cir. 2015).] There, the Sixth Circuit denied summary judgment for defendant SHP because "a reasonable jury could find that the potential risk of the commission of constitutional torts by LPN nurses who lack the essential knowledge, tools, preparation and authority to respond to the recurring medical needs

---

[1] To be clear, SHP is not a "local government" *per se*. However, by virtue of its contractual agreement with Franklin County, SHP is subject to suit for constitutional violations pursuant to § 1983, and may be held liable under a theory of *e* liability. *See Shadrick v. Hopkins County*, 805 F.3d 724, 737 (6th Cir. 2015).

10

of prisoners in the jail setting is so obvious that SHP's failure to provide adequate training and supervision to those nurses constitutes deliberate indifference to the risk." *Shadrick*, 805 F.3d at 739–40. In reaching this conclusion, the Court relied on "evidence . . . that SHP did not have a training program," and "the blanket inability of the LPN nurses who worked at [Hopkins County Detention Center] to identify and discuss the requirements of the SHP's written policies governing their work." *Id.*

These elements are not present here. Nurse Trivette referenced the protocols several times during her deposition testimony. [*See* R. 63-6.] Whether she applied the protocols correctly or not, she was clearly aware of their existence. Further, Nurse Trivette is the only LPN involved or deposed in this case. Her individual knowledge of—or even lack thereof—SHP protocols or procedures would not be indicative of a systemic failure to adequately train LPNs on the part of SHP. The court's concern in *Shadrick* that LPNs, who are not qualified to diagnose medical conditions, "are routinely confronted with frequent and competing demands for medical care" does not extend to Nurse Bartram and Nurse Jensen who, as nurse practitioners, are licensed to diagnose. *Shadrick*, 805 F.3d at 740. And although Ms. Rowland correctly characterizes the Sixth Circuit's treatment of SHP in *Shadrick* as "blistering," that is not evidence. *Shadrick* is case law; the factual circumstances are not imputed to the factual record in this case. Ultimately, the Court finds the undisputed facts do not permit a finding of deliberate indifference on the part of SHP. Count 1 is DISMISSED.

### E

Defendants have also moved for summary judgment on Count 2 of Ms. Rowland's complaint, which raises Kentucky state law claims of negligence and gross negligence by Nurse Trivette, Nurse Bartram, and Nurse Jensen. [*See* R. 1 at ¶ 21.] In addition to claims in their

11

individual capacities, Ms. Rowland's complaint alleges Nurses Bartram and Jensen are liable under a theory of supervisory liability.

Under Kentucky negligence law, the Plaintiff must establish the following elements: (1) a duty of care; (2) breach of that duty; (3) actual injury; and (4) the injury was proximately caused by the negligence. *Mullins v. Commonwealth Life Ins. Co.*, 839 S.W.2d 245 (Ky. 1997); *Ferguson v. United States Army*, 938 F.2d 55 (6th Cir. 1991) (citing *Deutsch v. Shein*, 597 S.W.2d 141, 143 (Ky. 1980)); *M&T Chemicals, Inc. v. Westrick*, 525 S.W.2d 740 (Ky. 1975). "A crucial aspect of a Kentucky medical negligence case is the requirement that a plaintiff establish the standard of skill expected and the opinion that the alleged negligence proximately caused the injury. *Reams v. Stutler*, 642 S.W.2d 586, 588 (Ky. 1982). The opinion of the expert must be based on "reasonable medical probability and not speculation or probability." *Sakler v. Anesthesiology Associates, P.S.C.*, 50 S.W.3d 210, 213 (Ky. App. 2001).

Ms. Rowland alleges Nurse Jensen, Nurse Batram, and Nurse Trivette were negligent in administering her medical care. She also argues Nurse Jensen should be held liability for breach of her duty as medical director of FCRJ. [R. 53-1 at 29.] Ms. Rowland relies on the testimony of Nurse Renee Dahring to articulate the standard of care applicable in both instances. Defendants argue summary judgment is required as to the claims against Nurse Jensen as medical directory because Nurse Dahring "does not possess sufficient qualifications to offer testimony on the standard of care as she was never served as a medical director and has no education, training or experience with regard to that position." *Id.*

In contrast, Defendants do not dispute Nurse Dahring's knowledge of the applicable medical standard with respect to care provided directly to Ms. Rowland by the nurses. Instead, they argue summary judgment is appropriate as to these claims because Ms. Rowland has not

12

linked the alleged breach to her injuries. *Id.* Defendant argues "Plaintiff has introduced no expert proof to link any injury sustained by the Plaintiff to the actions or inactions of Nurse Trivette or APRN Bartram." *Id.* In response, Ms. Rowland argues this is not a case that requires verifying medical evidence, because "[w]hen it comes to a serious medical need as obvious as Rowland's, a delay in treatment is enough to sustain a constitutional claim." [R. 62 at 23.]

**1**

As stated above, Ms. Rowland argues against summary judgment in favor of Nurses Jensen, Bartram and Trivette because ""[w]hen it comes to a serious medical need as obvious as Rowland's, a delay in treatment is enough to sustain a constitutional claim." [R. 62 at 23.] It is unclear whether Ms. Rowland intends this argument to support her federal or state law claims. The case law cited by Ms. Rowland is applicable to claims of deliberate indifference brought under § 1983. *See Blackmore v. Kalamazoo County*, 390 F.3d 890 (6th Cir. 2004). She is correct that verifying medical evidence is not always required to establish a constitutional violation in the context of a § 1983 action. Under Kentucky law, by contrast, a claim of medical negligence requires Plaintiff to supply evidence demonstrating the standard of skill expected and the opinion that the alleged negligence proximately caused the injury. *Reams v. Stutler*, 642 S.W.2d 586, 588 (Ky. 1982).

In making this showing, it is not necessary for the expert witness to specifically state that the defendants' negligence was the proximate cause of the plaintiff's injuries. Instead, Ms. Rowland's burden is satisfied where "the medical evidence and its natural inferences establish a jury question on proximate cause." *Id.* at 588; *see also Walden v. Jones*, 439 S.W.2d 571, 574 (Ky. 1968) ("That the negligence of a physician was the proximate cause of injury to his patient need not be established with certainty, but probability is sufficient.")).

The Court finds that Ms. Rowland has met her burden here with respect to Nurse Jensen and Nurse Trivette.  Deposition testimony from Nurse Dahring, it is not disputed, establishes the standard of care applicable to Nurse Trivette and Nurse Jensen in their care of Ms. Rowland.  As to Nurse Trivette, Nurse Dahring also testified that it was her professional opinion that Nurse Trivette practiced outside her scope as an LPN.  [R. 63-2 at 98–99.]  Nurse Dahring was critical of the combination of medications Ms. Rowland received, and opined that had Nurse Trivette and Nurse Jensen offered appropriate care, Ms. Rowland could have avoided hospitalization.  *Id.* at 100, 109.  She specifically testified that Nurse Jensen was negligent in her prescript of a second round of prednisone, in light of Ms. Rowland's symptoms and other medications.  *Id.*  Summary judgment is inappropriate here.  A reasonable jury could find that negligence on the part of Nurse Trivette and Nurse Jensen caused Ms. Rowland's injuries.  *See Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

As explained above, the record indicates that Nurse Bartram never interacted with or examined Ms. Rowland.  [R. 53-1 28.]  Her only involvement in Ms. Rowland's care was approval after the fact Nurse Trivette's administration of Mobic for Ms. Rowland's toothache.  *Id.*  Therefore, there is not sufficient evidence in the record to support a finding that committed medical negligence in her care of Ms. Rowland.

**2**

Ms. Rowland argues Nurses Bartram and Jensen are liable under a theory of supervisory liability.  She explains, "Jensen and Bartram implicitly authorized, approved, or knowingly acquiesced in Trivette's violations of policies, procedures and protocols that were documented in the records they reviewed, approved, and signed."  [R. 62-1 at 17.]

From the pleadings, it is unclear whether this liability is supposed to attach to the § 1983 claim of deliberate indifference or the state law claim of medical negligence.  In either instance, the claim fails.  In the context of a § 1983 claim, supervisory liability is predicated on underlying unconstitutional behavior of a supervisee.  *See Salehpour v. Univ. of Tenn.*, 159 F.3d 199, 206 (6th Cir. 1998).  Thus, in order to hold Nurse Jensen and Nurse Bartram liable for the actions of Nurse Trivette, Nurse Trivette must have committed an unconstitutional act.  The Court has granted summary judgment in favor of the defense on this point; therefore, the supervisory liability claims against Nurse Bartram and Nurse Jensen must also fail.

Nor does the record support vicarious liability for any state law claims.  Under *respondeat superior*, a Plaintiff may hold an employer liability for the torts of its employee.  *See Patterson v. Blair*, 172 S.W.3d 361, 369 (Ky. 2005).  Nurse Jensen and Nurse Bartram are not Nurse Trivette's employer.  That title belongs to SHP.  The Court will not address whether a claim might survive against SHP, as it was not raised or briefed by the parties.  Finally, Ms. Rowland appears to argue that Nurse Jensen is liable for her injuries for failure to act appropriately as a medical director.  Ms. Rowland does not cite, and the Court cannot find, any case law supporting liability against Nurse Jensen under such a theory.  Accordingly, these claims are DISMISSED.

### F

Finally, the Court turns to Ms. Rowland's claim for punitive damages.  Defendants argue that Ms. Rowland's claims, at best, support a claim of negligence which is insufficient to trigger punitive damages under Kentucky law.  Ms. Rowland disagrees, and asks the Court to reserve its determination at trial, "when it has had the opportunity to witness first-hand the individual Defenadnts' demeanor under cross-examination[.]"  [R. 62 at 24.]

15

Under Kentucky law, punitive damages are only appropriate where a plaintiff can establish defendants acted with oppression, fraud, or malice. K.R.S. § 411.184(1). Fraud is not applicable here. "Oppression" is defined as "conduct which is specifically intended by the defendant to subject the plaintiff to cruel and unjust hardship. *Id.* "Malice" is defined as "conduct which is specifically intended . . . to cause tangible or intangible injury to the plaintiff," or that which is "carried out by the defendant with a flagrant indifference to the rights of the plaintiff and with a subjective awareness that such conduct will result in death or bodily harm." *Id.*

Here, Ms. Rowland has not presented evidence that would establish the defendants intended to harm her specifically. Nor has she pointed to evidence in the record that would establish defendants acted with a flagrant indifference to the rights of the plaintiff and with a subjective awareness that such conduct will result in death or bodily harm." *Id.* As the non-moving party, it is Ms. Rowland's duty to "direct the Court's attention to those specific portions of the record upon which it seeks to rely to create a genuine issue of material fact" in this aspect. *In re Morris*, 260 F.3d 654, 665 (6th Cir. 2001). She has not endeavored to do so, and instead urges the Court to wait until trial to assess the defendants' demeanors. This is not enough to create a genuine issue for trial. Further, to find otherwise would appear inconsistent with the Court's holding with respect to Ms. Rowlands § 1983 claim of deliberate indifference.

### III

The medical care Ms. Rowland received at FCRJ was imperfect. But she has not established that she was treated so cruelly as to violate the Eight Amendment prohibition against cruel and unusual punishment. Nevertheless, the record demonstrates that there is a genuine issue such that the state law negligence claims should be submitted to a jury. Accordingly, it is

hereby **ORDERED** that Defendants' Motion for Summary Judgment **[R. 53] is GRANTED IN PART.** Ms. Rowland's § 1983 claims of deliberate indifference against Nurse Bartram, Nurse Jensen, and Nurse Trivette, set out in Count 1 of the Complaint [R. 1] are **DISMISSED**. Likewise, Ms. Rowland's claim against § 1983 predicated upon a theory of *Monell* liability is **DISMISSED**. Finally, Ms. Rowland's request for punitive damages is **DENIED**.

This the 27th day of July, 2020.

Gregory F. Van Tatenhove
United States District Judge