UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

| | | |
|---|---|---|
| KIMISSA ROWLAND, | ) | Civil No. 3:18-cv-00033-GFVT |
| | ) | |
| Plaintiff, | ) | |
| | ) | **MEMORANDUM OPINION** |
| v. | ) | **&** |
| | ) | **ORDER** |
| SOUTHERN HEALTH PARTNERS, | ) | |
| *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |

*** *** *** ***

This matter is before the Court on Defendants' Second Motion to Exclude [R. 102] and Motion for Leave to File [R. 103].[1]  Plaintiff's state law claims were denied without prejudice and this matter was stricken from the record on August 5, 2020.  [R. 91.]  Now, this matter has been returned to the Court post-appeal.  [R. 95.]  In light of its return, Defendants renew their previously pending evidentiary motions and request permission to file for summary judgment two months beyond the deadline set by the Court.  [R. 102; R. 103.]  Upon review of Parties' briefing, Defendants' Second Motion to Exclude [R. 102] is **GRANTED IN PART**, **DENIED IN PART**, and **DENIED IN PART AS MOOT**, while Defendants' Motion for Leave to File [R. 103] is **DENIED**.

---

[1] The Court notes that Parties have filed "renewed" motions post-appeal identical to those pending prior to the dismissal of this matter.  [*Compare* R. 52 *with* R. 104.]  Accordingly, certain citations in this Order may refer to original filings as opposed to renewed filings because certain responses and replies were not re-filed alongside the renewed motions.

**I**

Southern Health Partners, Inc. is a "for-profit jail health care company" who contracts with local governments to provide medical care within their facilities. [R. 1 at ¶ 17.] Defendant Sabina Trivette is a licensed practical nurse (LPN) and employee of SHP. [R.53-1 at 1.] Defendant Stacy Jensen is an advanced practice registered nurse (APRN) and independent contractor of SHP. *Id.* Jensen subcontracted with Jane Bartram, also an APRN, for her work in the jail. *Id.* at 1–2. Ms. Rowland was a sentenced inmate at Franklin County Regional Jail where she alleges that she suffered injuries caused by Defendants' negligent treatment of her ulcerative colitis. [R. 62 at 12.]

The timeline of events is of some importance in this case. Ms. Rowland was admitted to Franklin County Regional Jail on July 28, 2017, on a drug charge. [R. 1 at ¶ 9.] On August 8, Ms. Rowland saw Nurse Trivette to deliver her medical history and undergo a physical. [R. 62 at 4.] On August 15, Ms. Rowland submitted a medical request form and saw Nurse Trivette the following day, August 16, complaining of a sexually transmitted disease. [R. 53-1 at 3; R. 62 at 4.] Nurse Trivette gave medication for the STD based on SHP protocol. [R. 53-1 at 4.]. Ms. Rowland again submitted sick class slips on August 18 and 19 complaining of rash and cold symptoms, and was seen by Nurse Trivette once again on August 19 for these symptoms. [R. 53-1 at 4.]

On September 11, Ms. Rowland was released on medical furlough in order to see her regular doctor for issues with her ulcerative colitis. [R. 53-1 at 4; R. 62 at 5.] Due to a lapse in insurance, however, Ms. Rowland was unable to see her doctor during the furlough. [R. 62 at 5.] Upon return to the jail on September 13, Ms. Rowland was x-rayed by jail staff who suspected that she had a foreign body concealed in her rectum. [R. 53-1 at 5.] Ms. Rowland was sent to a

local hospital for a CT scan. *Id.* The scan did not reveal a foreign body, and the emergency room doctor released Ms. Rowland with a note advising she follow-up with a gastroenterologist "as soon as possible[.]" [R. 62-5.] The hospital doctor also prescribed a five-day course of prednisone. [R. 62 at 7.] Ms. Rowland began treatment with prednisone on September 21 after Nurse Bartram reviewed the after-care instructions received from the hospital. [R. 53-1 at 6.]

On September 25, Ms. Rowland submitted a medical request slip complaining of a toothache. [R. 53-1 at 6.] She was seen by Nurse Trivette the following day, who provided Motrin and cipro for her tooth pain. [R. 62 at 8.] Defendants contend Ms. Rowland did not submit another medical call slip for ulcerative colitis symptoms until October 3. [R. 53-1 at 6.] Ms. Rowland believes she may have submitted additional call slips between September 25 and October 3, but she cannot recall what they said or how Defendants responded. [R. 63-5 at 101–03.] On October 3, Ms. Rowland submitted a call slip which said "my stomach again (ulcerative colitis) and my mouth is still sore and swolling [*sic*]." *Id.* She was seen the next day by Nurse Trivette, wherein she complained of nausea and vomiting. *Id.* Nurse Trivette referred her to an APRN, but it wasn't until October 16 that Ms. Rowland was seen by Nurse Jensen. [R. 53-1 at 6; R. 62 at 9.] Nurse Jensen noted Ms. Rowland was experiencing vomiting and blood in her stools, and diagnosed her symptoms as those of ulcerative colitis. [R. 53-1 at 6; R. 62 at 9.] Nurse Jensen started Ms. Rowland on a second round of prednisone and ordered an appointment be made for Ms. Rowland at UK's Gastroenterology Clinic. Ms. Rowland received the prednisone, but was never taken to the clinic. [R. 62 at 10.] And according to Ms. Rowland, there is no evidence in the record that the clinic was ever called. *Id.*

On October 18, Ms. Rowland submitted a medical request slip stating she was not responding to the prednisone as quickly as usual, and also complaining of pain in her kidneys.

[R. 53-1 at 7.]  Again she was seen by Nurse Trivette the very next day and was assessed for a possible urinary tract infection.  *Id.*  Ms. Rowland submitted an additional medical call slip on October 25 which read: "vomiting all night, can't keep anything down, cold chills.  Feel afall [*sic*]."  [R. 53-1 at 7.]  Ms. Rowland was seen by Nurse Trivette, who elevated the matter to Nurse Jensen.  Nurse Jensen ordered Ms. Rowland be taken to the emergency room.  *Id.*  Ms. Rowland was admitted to the hospital where she remained for two weeks until her ulcerative colitis was managed.  [R. 62 at 11.]

Although many of Ms. Rowland's claims were dismissed at summary judgment [R. 75], a supervisory liability claim against SHP and state law negligence claims against all remaining defendants are left to be tried.  [*See* R. 75.]  In support of her case, Ms. Rowland has retained expert witness Renee Dahring, MSN, APRN, CNP, CCHP.  [R. 79.]  Now, Defendants seek the exclusion of various opinions proffered by Ms. Dahring.  [R. 104.]  Moreover, despite the Court having ordered any summary judgment pertaining to the pending supervisory liability claim be filed by October 15, 2021, Defendants seek leave to file a motion dated December 17, 2021.  [R. 104.]  In response, Plaintiffs oppose Defendants' Motion to Exclude and Motion for Leave to File.  [R. 106; R. 60.]

## II

### A

The Court turns first to Defendants' Motion to Exclude [R. 104].  Federal law governs procedural and evidentiary issues, including the admissibility of expert testimony.  *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993).  Admissibility of expert testimony is governed specifically by Federal Rule of Evidence 702, which states:

> A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if: (a) the expert's

4

scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue; (b) the testimony is based on sufficient facts or data; (c) the testimony is the product of reliable principles and methods; and (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.  The Sixth Circuit has identified three specific Rule 702 requirements in deciding the admissibility of proposed expert testimony.  *In re Scrap Metal Antitrust Litig.*, 527 F.3d 517, 528–29 (6th Cir. 2008).   First, the proposed expert must have the requisite qualifications, whether it be through "knowledge, skill, experience, training, or education."  *Id.* at 529 (quoting Fed. R. Evid. 702).  Second, the testimony must be relevant, meaning that it "will assist the trier of fact to understand the evidence or to determine a fact in issue."  *Id.* (quoting Fed. R. Evid. 702).  Third, the testimony must be reliable.  *Id.*

The third prong of Rule 702 requires the Court to determine whether the testimony is reliable.  Rule 702 provides a number of standards by which a district court in its gatekeeper role is to gauge reliability.  A court should look to whether the testimony is based upon "sufficient facts or data;" whether it is the "product of reliable principles and methods;" and whether the expert "has applied these principles or methods reliably to the facts of the case."  *In re Scrap Metal*, 527 F.3d at 529 (quoting Fed. R. Evid. 702).  Additionally, a district court is to consider "such factors as testing, peer review, publication, error rates, the existence and maintenance of standards controlling the technique's operation, and general acceptance in the relevant scientific [or technical] community."  *United States v. Langan*, 263 F.3d 613, 621 (6th Cir. 2001) (citing *Daubert*, 509 U.S. at 593–94).  The reliability inquiry is a flexible one, and the above factors are not a "definitive checklist or test." *Daubert*, 509 U.S. at 593.

District courts are given broad discretion in determining whether a particular expert's testimony is reliable.  *See, e.g.*, *Tamraz v. Lincoln Elec. Co*., 620 F.3d 665, 672 (6th Cir. 2010);

*see also Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 152 (1999) ("[T]he trial judge must have considerable leeway in deciding in a particular case how to go about determining whether particular expert testimony is reliable."). Notably, in exercising this discretion, a court must be careful not "to impinge on the role of the jury or opposing counsel." *Burgett v. Troy-Bilt LLC*, 579 F. App'x 372, 377 (6th Cir. 2014). Instead, "vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." *Daubert*, 509 U.S. at 596.

## 1

In their Motion, Defendants seek the exclusion of four portions of Ms. Dahring's proffered testimony. First, Defendants ask the Court to "exclude any opinions or testimony regarding Stacy Jensen's standard of care as Medical Director." [R. 52-1 at 8-11.] In her expert report, Ms. Dahring opines on the "typical" duties of a Medical Director and argues that APRN Jensen was negligent in performing her duties. [R. 102-22 at 5.] In support of exclusion, Defendants argue that Ms. Dahring is not qualified to provide an expert opinion on the alleged failings of APRN Jensen because the job duties Ms. Dahring held while serving as a Clinical Director in correctional settings do not equate to the job duties APRN Jensen held as Medical Director for SHP. [*See id.* at 8-9.] Consequently, though Defendants concede that "Nurse Dahring may be qualified to testify as a witness about some things in the medical field," they argue that "her opinions regarding APRN Jensen's standard of care of a medical director […] exceed her scope of expertise […]." *Id.* at 9. Moreover, Defendants argue that Ms. Dahring's opinion is not "based upon sufficient facts or data" because she "has not reviewed APRN Jensen's contract with SHP" and is only speculating on what her duties were. *Id.* at 10 (citing *Tamraz v. Lincoln Elec. Co.*, 620 F.3d 665, 671 (6th Cir. 2020) ("[N]o matter how good an

experts' 'credentials' may be, they are 'not permitted to speculate.'").

In response, Plaintiff contends that Defendants are placing "form over substance." [R. 60 at 1.] Though Plaintiff concedes that Ms. Dahring served as a "Clinical Director" who reported directly to a "Medical Director," she argues that Ms. Dahring's responsibilities in that role were similar to APRN Jensen's role despite the difference in job title and despite APRN Jensen not reporting directly to a doctor. *See id.* at 1-2. Plaintiff further argues that APRN Jensen was "Medical Director" in name only and did not actually perform the duties of a person who holds that title. Accordingly, Plaintiff contends that Ms. Dahring need not have reviewed the specific terms of APRN Jensen's contract to analyze whether she adequately performed the duties of an on-site leader. *See id.*

The Court agrees with Plaintiff Rowland. When ruling on motions to exclude expert testimony, "[t]he Court is mindful that its role as gatekeeper is not intended to serve as a replacement for the adversary system." *King v. Taylor*, 944 F.Supp.2d 548, 552-53 (E.D. Ky. 2013). As "Clinical Director," Ms. Dahring's duties included "work[ing] with other providers [...] and monitor[ing] the care [of patients]." [R. 52-21 at 3.] Similarly, in her role as "Medical Director," APRN Jensen was tasked with comparable work. Moreover, despite her title, APRN Jensen indicates that she did not actually perform the duties of a higher-ranking official. [*See* R 53-17 at 11-17.] Because their duties were indeed similar, Defendants' argument that Ms. Dahring is not qualified to opine on APRN Jensen's job performance is unpersuasive. If Defendants' wish to highlight the facial differences between the positions, "[v]igorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof" is appropriate, but exclusion is not. *King*, 944 F.Supp.2d at 553.

Similarly, the Court is unconvinced that Ms. Dahring should not be permitted to testify as

to APRN Jensen's performance because she has not reviewed APRN Jensen's contract with the correctional facility.  [R. 52-at at 10.]  In preparation of her report, Ms. Dahring reviewed SHP records, the Complaint, certain SHP policies, procedures, and treatment protocols, and the depositions of Defendants Trivette, Bartram, and Jensen.  [R. 102-22 at 2.]  Accordingly, Ms. Dahring reviewed a plethora of material which renders her report "based upon sufficient facts or data" within the scope of Rule 702(b).  Once again, Defendants' opposition to Ms. Dahring's proffered statements are more appropriately addressed on cross-examination than through exclusion.  *See Kindoll v. Southern Health Partners*, 2019 U.S. Dist. LEXIS 53634 at *23 (E.D. Ky. March 29, 2019) (denying the exclusion of expert testimony when an expert relied on deposition and other document testimony as opposed to the written policies of SHP in preparation of his report).  Consequently, Defendants' first request for exclusion is **DENIED**.

**2**

Next, Defendants argue that "the Court must exclude any opinions or testimony regarding SHP's alleged failure to train and supervise." [R. 52-1 at 11-12.]  Like their argument regarding APRN Jensen's contract, Defendants contend that Ms. Dahring should not be permitted to testify as to SHP's alleged failure to train and supervise because "she has no background or experience in administrative duties or quality assurance, because "she has not reviewed the policies and procedures applicable to the nurses with whom she works," and because she has not reviewed SHP policies and procedures.  [R. 52-1 at 11-12.]  In response, Plaintiff contends that no Defendant in this matter has read the policies and procedures applicable to their roles and have admitted as such in deposition.  [R. 60 at 4.]  Accordingly, Plaintiff argues that if the "[j]ury needs an expert to explain to them why such facts signify a gross failure of SHP and Jensen to supervise their subordinates […] Ms. Dahring is appropriately qualified." *Id.*  Upon review, the

Court first declines to hold that Ms. Dahring's proffered opinion is excludable because she has not read the entirety of SHP's policies.  Instead, like their contention regarding Ms. Dahring's failure to read APRN Jensen's employment contract, Defendants' concerns can be appropriately addressed through vigorous cross-examination at trial.  *See Kindoll*, 2019 U.S. Dist. LEXIS at *22.

But, the Court will grant Defendants' request for exclusion because review of Ms. Dahring's proffer on this topic reveals it to not be expert testimony but instead a lay opinion proffered without personal knowledge.  Under Federal Rule of Evidence 701, lay opinion testimony is admissible if it is (1) "rationally based on the witness's perception," (2) "helpful to clearly understanding the witness's testimony or to determining a fact in issue," and (3) "not based on scientific, technical, or other specialized knowledge."  Fed. R. Evid. 701.  Unlike her proffer regarding negligence, Ms. Dahring's testimony regarding supervision and training is not based on expert skill or qualification.  In her proffer, Ms. Dahring indicates that, by solely reading the depositions of the SHP Defendants, she has determined that LPN Trivette and APRNs Jensen and Bartram were improperly trained and supervised.  [R. 102-22 at 6.]  As such, Ms. Dahring concedes that her opinion is not based on her professional understanding of proper training procedures or her expert experience in training employees but is instead simply speculation on what she believes to be improper.  [*See* R. 52-1 at 11-12.]  As a result, her opinion on this topic ventures from expert opinion testimony to lay opinion testimony, which, per Federal Rule of Evidence 602, requires personal knowledge that Ms. Dahring lacks.[2]  Fed. R. Evid. 602.

---

[2] The Court notes the distinction between Ms. Dahring's reliance on deposition testimony here as opposed to her partial reliance on deposition testimony regarding the practices of APRN Jensen as a Medical Director.  Here, Ms. Dahring has no experience training employees and does claim to be an expert in training procedure.  Conversely, Ms. Dahring could properly form an opinion in reliance on deposition testimony as to the sufficiency of APRN Jensen's actions as Medical Director because she held a similar role in the past, understood the duties of the role as explained by deposition, and was not simply speculating on what she believed to be best practice.

Consequently, Defendants' second request for exclusion is **GRANTED**.

**3**

Third, Defendants request the exclusion of "any opinions or testimony regarding speculative or 'possible' injuries." [R. 52-1 at 13-14.] Specifically, Defendants request Ms. Dahring be prevented from testifying as to the possible exacerbation of Ms. Rowland's ulcerative colitis caused by APRNs Jensen and Bartram prescribing "Mobic for Ms. Rowland's toothache pain." *Id.* at 13. In response, Plaintiff indicates that she "has no intention of asking Ms. Dahring to speculate or "testify to 'possibilities' during her direct examination at trial." [R. 60 at 4.] Accordingly, based on Plaintiff's indication that this topic will not be discussed at trial, Defendants' third request is **DENIED AS MOOT**.

**4**

Finally, Defendants request the exclusion of any testimony proffered by Ms. Dahring regarding the sufficiency of the treatment of Plaintiff's medical conditions aside from her ulcerative colitis as irrelevant and prejudicial. [R. 52-1 at 14-16.] In her report, Ms. Dahring criticizes the SHP Defendants' treatment of various medical conditions Plaintiff experienced while incarcerated alongside her ulcerative colitis. [R. 52-1 at 15-16.] Specifically, Ms. Dahring contends that the SHP Defendants "failed to properly test for [an] STD and UTI and improperly treated both." *Id.* at 15. Similarly, Ms. Dahring criticizes the diagnosis and treatment of a toothache reported by the Plaintiff. *Id.*

In support of exclusion, Defendants contend that the care surrounding these conditions is "irrelevant" to the care Plaintiff received for her ulcerative colitis, that the treatment of these conditions is not at issue in this dispute, and that permitting Ms. Dahring to opine on the treatment of other conditions would be unduly prejudicial. *See id.* Similarly, Defendants

10

contend that Ms. Dahring cannot connect the treatment of these conditions to the alleged worsening of Plaintiff's ulcerative colitis and, consequently, fails to establish any related causation. *See id.* In response, Plaintiff contends that Defendants' treatment of her other conditions is relevant to their "state of mind, and the issues of malice and gross negligence, […]." [R. 60 at 4.] Ultimately, Plaintiff argues that the ineffectual treatment of these conditions helps to establish the existence of "a system that permits habitual disregard of the standard of care, applicable policies, procedures and protocols, and even limitations on a licensed practical nurse's scope of practice." *Id.* at 5.

Upon review, the Court declines to exclude the requested testimony. Under Rule 702, expert testimony is relevant when it "will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702(a). Under Rule 401, evidence is relevant if it "(a) has a tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." *King*, 944 F. Supp. 2d at 553 (citing Fed. R. Evid. 401). Furthermore, "[t]he Rules' basic standard of relevance is [] a liberal one." *Id.* (citing *Daubert*, 509 U.S. at 587). Here, by applying the liberal relevance standard, the Court concludes that, despite the admitted lack of causation between SHP's treatment of Plaintiff's earlier medical conditions and the worsening of her ulcerative colitis, "such testimony nonetheless provides relevant evidence that systemic deficiencies during Plaintiff's entire course of treatment caused her injuries," and is related directly to her negligence claim. *Kindoll*, 2019 U.S. Dist. LEXIS at *26 (finding previous failures to adhere to the standard of care admissible evidence of systemic failures relevant to a negligence claim). Furthermore, despite contending that the admission of evidence of the prior treatment of Plaintiff would be "unduly prejudicial," Defendants do not expand on their argument nor show how the probative value of this evidence

is substantially outweighed by unfair prejudice, as required by Rule 403.  Fed. R. Evid. 403.

Accordingly, Defendants' fourth request for exclusion is **DENIED**.

**B**

Next, the Court turns to Defendants' request for leave to file a motion for summary

judgment [R. 103.]  On September 15, 2021, the Court ordered any summary judgment motion

related to the pending supervisory liability claim against SHP be filed within thirty days of the

date of the entrance of its Order, with response and reply time to follow the timeline set forth in

the Local Rules.  [R. 100.]  More than two months later, however, Defendants moved for leave to

file a motion for summary judgment on this very issue because the September 15 date "was

inadvertently calendared as a deadline for Plaintiff," and not Defendants.  [R. 103 at 3.]

Accordingly, Defendants' request leave to file their Motion and, separately, have filed their

Motion into the Record not as an attachment or proposal, but as a stand-alone Motion.  [R. 104.]

In response, Plaintiff does not respond substantively to Defendants' tendered Motion [R.

104], but instead contends that two months is too little too late, and that "Plaintiff has long since

assumed that SHP had opted to not renew its motion and has been preparing for trial

accordingly."  [R. 106.]  Upon review, the Court agrees with Plaintiff.  This matter has been

pending since 2018 and must move forward.  Furthermore, even if the Court were to permit the

filing of the Motion, the remaining negligence claims against Defendants are not briefed therein

and this matter would proceed to trial regardless.  Accordingly, Defendants' Motion for Leave

[R. 103] is **DENIED**.

**III**

Accordingly, and the Court being otherwise sufficiently advised, it is hereby **ORDERED**

as follows:

1. Defendants' Motion to Exclude [R. 102] is **GRANTED IN PART, DENIED IN PART,** and **DENIED AS MOOT IN PART**;

2. Defendants' Motion for Leave to File [R. 103] is **DENIED**;

3. Defendants' Tendered Second Motion for Summary Judgment [R. 104] is **STRICKEN** from the Record;

4. Defendants' Motion to Exclude [R. 52] is **DENIED AS MOOT**.


This the 23d day of February, 2022.

Gregory F. Van Tatenhove
United States District Judge